IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| NHAN VAN BUI,   ) | |
| ) | |
| Movant,   ) | |
| ) | |
| v.   ) | No. 1:16-cv-762 (LMB) |
| ) | Crim. No. 1:05-cr-300 (LMB) |
| UNITED STATES OF AMERICA,   ) | |
| ) | |
| Respondent.   ) | |

MEMORANDUM OPINION

Before the Court is Nhan Van Bui's ("Bui" or "movant") Motion to Vacate Under 28 U.S.C. § 2255 ("Motion to Vacate") in which he argues that his conviction for violating 18 U.S.C. § 924(c) should be vacated in light of recent Supreme Court precedent. The government opposes the motion. The central dispute between movant and the government is whether the predicate crime of violence supporting movant's § 924(c) conviction was solely conspiracy to commit Hobbs Act robbery, in which case his conviction would have to be vacated, or both conspiracy to commit Hobbs Act robbery and substantive Hobbs Act robbery, in which case the § 924(c) conviction would not be vacated. For the reasons explained below, Bui's Motion to Vacate will be dismissed.

I.

On June 30, 2005, a federal grand jury in the Eastern District of Virginia returned a four-count indictment charging Bui with conspiracy to commit Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 1); substantive Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 2); and using, carrying, and brandishing of a firearm during and in relation to the commission of a crime of violence in violation of 18 U.S.C. § 924(c) (Counts 3 and 4). The section of Count 1

entitled "OVERT ACTS" described Bui's involvement in four discrete robberies which took place (1) on November 29, 2001 in Silver Spring, Maryland;[1] (2) on February 1, 2002 in Springfield, Virginia; (3) on February 4, 2002 in Germantown, Maryland;[2] and (4) on April 6, 2002 in Falls Church, Virginia.[3] [Dkt. No. 40-1] at 3-5. The first § 924(c) count, Count 3, was based on the events of February 1, 2002 in Springfield, Virginia, and identified two predicate offenses: the conspiracy to commit Hobbs Act robbery identified in Count 1, and the Hobbs Act robbery identified in Count 2. Specifically, Count 3 alleged that:

> On or about February 1, 2002, in Springfield, Virginia, in the Eastern District of Virginia, NHAN VAN BUI, the defendant herein, did unlawfully, knowingly and intentionally use, carry and brandish a firearm, to wit: a handgun, and did aid, abet and assist in the commission of this offense, during and in relation to a crime of violence for which the defendant may be prosecuted in a court of the United States, to wit: the conspiracy to obstruct, delay and affect commerce and the movement of articles in commerce in robbery, in violation of Title 18, United States Code, Section 1951, as set forth and charged in Count 1 of this indictment; and the robbery affecting commerce, in violation of Title 18, United States Code, Section 1951, as set forth and charged in Count 2 of this indictment. (All in violation of Title 18, United States Code, Sections 2 and 924(c)(1).)

Id. at 7. Count 4 was based on the events of February 4, 2002 and identified one predicate offense: the conspiracy to commit Hobbs Act robbery identified in Count 1.

---

[1] It was later determined that Bui did not personally participate in the November 29, 2001 robbery, although he was present while the robbery was being planned. [Dkt. No. 27-1] ¶ 31.

[2] On or about March 18, 2003, in the Circuit Court of Montgomery County, Maryland, movant pleaded guilty to a number of felony counts based on this robbery, including robbery with a deadly or dangerous weapon, use of a handgun during a crime of violence, burglary, theft, and sexual assault. For these offenses, Bui was sentenced to a total of 36 years' imprisonment, 20 of which were suspended. [Dkt. No. 27-1] ¶¶ 14, 45.

[3] On or about March 19, 2004, Bui pleaded guilty in Fairfax County Circuit Court for his role in the April 6, 2002 robbery, and was sentenced to 10 years' imprisonment, 8 of which were suspended. [Dkt. No. 27-1] ¶ 14, 46.

On September 29, 2005, Bui pleaded guilty to Counts 1 and 3 of the indictment under a written Plea Agreement which provided for the dismissal of Counts 2 and 4. In describing Count 3, the plea agreement stated the following:

> Count 3 charges the defendant with using, carrying and brandishing a firearm during and in relation to a crime of violence, to wit: conspiracy to affect commerce by robbery, in violation of Title 18, United States Code, Section 1951, and robbery affecting commerce, in violation of Title 18, United States Code, Section 1951, all in violation of Title 18, United States Code, Sections 924(c) and 2.

[Dkt. No. 29-1] at 2. In the Statement of Facts supporting the plea agreement, Bui admitted that he helped commit three of the four robberies described in the indictment. With respect to the February 1, 2002 robbery, he admitted that:

> On or about February 1, 2002, in Springfield, Virginia, within the Eastern District of Virginia, [he] and two unindicted co-conspirators (CC-3 and CC-4) agreed to rob the residence belonging to the owner of a Vietnamese restaurant located at the Eden Shopping Center in Falls Church, Virginia. The defendant chose to rob the residence of this individual because he believed that he would find cash proceeds from the restaurant at the residence. During and in furtherance of his participation in the conspiracy and this robbery, the defendant armed himself with a semi-automatic pistol. After arriving at the residence, the defendant knocked on the door, displayed and brandished his semi-automatic pistol at the elderly male occupant and, along with CC-3 and CC-4, physically forced the elderly male and an elderly female occupant to an upstairs bedroom, where the defendant, CC-3 and CC-4 bound the wrists and ankles of the elderly occupants with duct tape and taped their eyes shut. During this robbery, the defendant, CC-3 and CC-4 robbed the residence of the restaurant owner of approximately $7,000 in cash, which was the proceeds of his business, and jewelry valued at approximately $15,000.

[Dkt. No. 27-1] at 5.[4] Before accepting Bui's plea, the Court conducted an extensive plea colloquy with Bui, who was assisted by a Vietnamese interpreter, although he stated that he understood some English. After affirming to answer all questions truthfully, Bui admitted that he was 32 years old, had attended high school in the United States, and was bound by everything

---

[4] Although the Court does not have a physical copy of the Statement of Facts, because Bui's conviction and sentence predated electronic filing, the Statement of Facts was included in the Presentence Investigation Report.

3

included in the plea agreement and the Statement of Facts, even if the Court did not address every detail of those documents with him:

> THE COURT: All right. Mr. Crawley, for the record, would you explain how you went over the plea agreement with your client?
> MR. CRAWLEY: Your Honor, last evening, I met with Mr. Bui at the Alexandria Detention Center, at which time we had an interpreter, Vietnamese interpreter who read point for point each page of the plea agreement and the statement of facts. This morning, Ms. Pedersen from the U.S. Attorney's Office presented us with an amended version of both the plea agreement and the statement of facts, at which time we asked the Court for leave to have permission to review that with Mr. Bui. This interpreter, who's present in court this morning, read those corrections to Mr. Bui in full as it relates to the statement of facts and in brief as it relates to the plea agreement.

[Dkt. No. 38-1] at 7:20-8:10.

\*\*\*\*

> THE COURT: All right. Mr. Bui, as Mr. Crawley and the interpreters were going over the plea agreement with you, did you have questions that you asked Mr. Crawley?
> THE DEFENDANT: Yes, I did.
> THE COURT: All right. And did Mr. Crawley answer those questions to your satisfaction?
> THE DEFENDANT: Yes.
> THE COURT: As you stand in court this morning, do you have any questions whatsoever about your plea agreement with the government?
> THE DEFENDANT: No, I don't. I don't have any.
> THE COURT: All right. Now, do you understand that this written plea agreement is really a written contract between you and the United States government, and that by signing the contract after you've discussed it thoroughly with your lawyer and you've gone over it carefully and you've had the help of the interpreter, the contract becomes binding? Do you understand that?
> THE DEFENDANT: Yes, I do.
> THE COURT: And that means that even if I don't go over every paragraph or page of this plea agreement in court today, everything that's written in the 14-page document is still binding on you. Do you understand that?
> THE DEFENDANT: Yes, ma'am.

Id. at 8:15-9:14.

\*\*\*\*

4

> THE COURT: All right. Mr. Bui, do you understand that by signing the statement of facts, you've admitted to everything contained in the document? So I don't need to go over every paragraph of this with you in court today. Do you understand that?
> THE DEFENDANT: (In English) Yes, I understand.

Id. at 29:12-17.

During the plea colloquy, Bui clearly admitted committing the February 1, 2002 robbery in Springfield Virginia while armed with a semi-automatic pistol:

> THE COURT: . . . . [O]n February 1, 2002 --now, this is in Springfield, Virginia -- it says there [in the Statement of Facts] that you and two other members of this gang agreed to rob the residence of a person who owned a Vietnamese restaurant at the Eden Shopping Center in Falls Church. Is that correct?
> THE DEFENDANT: (In English) Yes, ma'am.

Id. at 33:17-22.

\*\*\*\*

> THE COURT: And you chose that particular restaurant owner to be robbed; is that right?
> THE DEFENDANT: (In English) Yes, ma'am.
> THE COURT: All right. Did you carry a semi-automatic pistol during that robbery?
> THE DEFENDANT: (In English) Yes, I did.
> THE COURT: All right. And are you the one who actually knocked on the door?
> THE DEFENDANT: (In English) Yes, ma'am, I am.
> THE COURT: And then you pulled out your gun. Is that what you did?
> THE DEFENDANT: (In English) Yes.
> THE COURT: And was there an older man in the, in the house when you got there?
> THE DEFENDANT: (In English) Yes, ma'am.
> THE COURT: And did the other people, the other two people who were with you, did they force that man and an older woman upstairs?
> THE DEFENDANT: (In English) Yes.
> THE COURT: And were they then -- were their wrists and ankles then tied with duct tape and their eyes taped shut?
> THE DEFENDANT: (In English) That's correct.
> THE COURT: And you saw that happening?
> THE DEFENDANT: (In English) Yes.
> THE COURT: All right. And do you agree that you robbed that -- at that location, you took $7,000 in cash and jewelry valued at approximately $15,000? Do you agree with that?

5

>THE DEFENDANT: (In English) I agree.

Id. at 34:19-35:22.

During the plea colloquy, the Court twice referred to the predicate crime of violence for Count 3 as the conspiracy described in Count 1, without explicitly stating that substantive Hobbs Act robbery was also a predicate offense:

> THE COURT: . . . .Now, with the second charge that you're pleading guilty to, which is Count 3, that alleges that you have used a firearm, carried and brandished a firearm in relation to a crime of violence, the crime of violence being the conspiracy to commit robbery affecting commerce, as described in Count 1.

Id. at 11:4-9.

\*\*\*\*

> THE COURT: All right. Do you understand, Mr. Bui, that if the Court accepts your guilty pleas today, there'll be no further trial of the issue, and you'll be found guilty?
> THE DEFENDANT: (In English) Yes.
> THE COURT: Then to Count 1, which is the conspiracy to affect 1998 commerce by robbery, how do you plead, guilty or not guilty?
> THE DEFENDANT: (In English) Guilty.
> THE COURT: All right. And to the charge in Count 3, which is the use and brandishing of a firearm during the commission of that conspiracy, how do you plead?
> THE DEFENDANT: (In English) Guilty.

Id. at 37:2-13.

Despite making these two incomplete references to the predicate offenses for Count 3, the Court made clear elsewhere during the colloquy that if Bui had chosen to go to trial, the government would have had to prove beyond a reasonable doubt that he used a firearm during the February 1, 2002 robbery:

> THE COURT: If you went to trial, then the government would have the burden of proving you guilty. In order for them to meet that burden, they'd have to prove that you were guilty beyond a reasonable doubt, and to do that, they have to prove

6

each and every one of the essential elements of the offense beyond a reasonable doubt.

Id. at 23:18-23.

\*\*\*\*

THE COURT: Now, as to Count 3, the government would have to prove beyond a reasonable doubt first of all that the conspiracy described in Count 1 did, in fact, occur. Do you understand that?
THE DEFENDANT: Yes, I do.
THE COURT: Then they'd have to prove that on February 1, 2002, in Springfield, Virginia, you knowingly and intentionally, and again that means not by an accident or mistake or other innocent reason, used, carried, and brandished a firearm, specifically a handgun, during the commission of a robbery. Do you understand that?
THE DEFENDANT: Yes, I understand.

Id. at 25:11-23.

In Bui's Presentence Investigation Report, his offense level was found to be 30. His criminal history category was VI, the highest possible category, which included past convictions for battery, grand theft, credit card fraud, reckless endangerment, and breaking and entering. For Count 1, the sentencing guideline range was 168 to 210 months, with a statutory maximum of 20 years' imprisonment. Count 3 carried a statutory mandatory minimum of 84 months' imprisonment to a maximum of life imprisonment, which had to be imposed consecutively to any sentence on Count 1. [Dkt. No. 27-1]. On December 9, 2005, Bui was sentenced to a total of 211 months' imprisonment, consisting of 127 months as to Count 1 and 84 months consecutive as to Count 3. [Dkt. No. 17]. This 211-month sentence was to be served concurrently with separate sentences ordered in Montgomery County Circuit Court and Fairfax County Circuit Court for two of the robberies mentioned in the indictment.

On June 25, 2016, the Federal Public Defender's office filed a motion under 18 U.S.C. § 2255 on Bui's behalf, arguing that his § 924(c) conviction should be vacated in light of

Johnson v. United States, 135 S. Ct. 2551 (2015), in which the Supreme Court held that the "residual clause" of 18 U.S.C. § 924(e)(2)'s definition of "violent felony" is unconstitutionally vague, see id. at 2557-63. On July 25, 2016, the government filed a motion to dismiss, to which movant responded. On December 21, 2016, the motion was stayed to await further guidance from the Supreme Court. On April 17, 2018, the Supreme Court held that the residual clause of 18 U.S.C. § 16's definition of "crime of violence"—which is nearly identical to § 924(c)(3)'s residual clause—is unconstitutionally vague. Sessions v. Dimaya, 138 S. Ct. 1204, 1210 (2018). In the wake of Sessions, the stay was lifted, and the parties filed additional briefs. On June 24, 2019, the Supreme Court resolved any doubt about § 924(c)(3)'s residual clause's definition of "crime of violence" by finding it unconstitutionally vague. See United States v. Davis, 139 S. Ct. 2319, 2336 (2019). In light of the Davis decision, the parties were ordered to supplement their briefing on whether Bui would be entitled to relief in light of that decision and, if so, what form such relief should take. The government continues to oppose Bui's motion, but argues that if the Court finds that granting relief is appropriate, it should reform defendant's § 924(c) conviction to the predicate offense of substantive Hobbs Act robbery, or conduct a resentencing. The matter is now fully briefed and ripe for decision.

II.

Section 924(c) forbids the use, carrying, or brandishing of a firearm "during and in relation to any crime of violence." 18 U.S.C. § 924(c)(1)(A). It further defines "crime of violence" as any felony offense that (A) "has as an element the use, attempted use, or threatened use of physical force against the person or property of another" or (B) "by its nature . . . involves a substantial risk that physical force against the person or property of another may be used in the

8

course of committing the offense." Id. § 924(c)(3). Subsection (A) of the definition is known as the "force" clause; subsection (B) is known as the "residual" clause.

After Davis, § 924(c)(3)'s residual clause can no longer support Bui's § 924(c) conviction. Bui's conviction nonetheless remains valid if the predicate offense underlying that conviction categorically qualifies as a crime of violence under the force clause. The validity of Bui's § 924(c) conviction therefore turns on whether the predicate offense for his conviction was conspiracy to commit Hobbs Act robbery, which the Fourth Circuit has held does not qualify as a crime of violence under the force clause, see United States v. Simms, 914 F.3d 229, 233-34 (4th Cir.), cert. denied, 140 S. Ct. 304, 205 L. Ed. 2d 196 (2019), or substantive Hobbs Act robbery, which does so qualify under binding Fourth Circuit precedent, see United States v. Mathis, 932 F. 3d 242, 266 (4th Cir. 2019).

The government argues that both conspiracy to commit Hobbs Act robbery and substantive Hobbs Act robbery were predicate offenses for Bui's § 924(c) conviction, and Bui's conviction therefore remains valid. In Bui's initial motion to vacate, he agreed that both crimes served as predicate offenses for his § 924(c) conviction, but argued that neither offense constituted a crime of violence. See Mot. to Vacate, [Dkt. No. 21] at 1 ("Count Three alleged that the underlying 'crime of violence' for the § 924(c) charge was interference with commerce by robbery, in violation of 18 U.S.C. § 1951 (Hobbs Act robbery), and conspiracy to do the same, as set forth in Counts One and Two of the indictment. However, post-Johnson, . . . both Hobbs Act robbery and conspiracy offenses in general categorically fail to qualify as 'crimes of violence.'"). In Bui's latest filing, he has changed positions, and now argues that "Hobbs Act conspiracy, not robbery, is the predicate for his conviction." [Dkt. No. 38] at 1. In support of his argument, Bui relies on the two statements by the Court during the plea colloquy referring to the

predicate offense in Count 3 as the conspiracy described in Count 1, without also mentioning the substantive Hobbs Act robbery described in Count 2 as the other predicate offense.

Although the Court shortened its description of Count 3 twice during the colloquy, those statements do not undermine the overwhelming evidence that the defendant, the Court, and counsel recognized there were two predicate offenses for Count 3: the conspiracy to commit Hobbs Act robbery described in Count 1 and the substantive Hobbs Act robbery described in Count 2. Both the indictment and the plea agreement specifically listed both offenses as predicates for Count 3. In the Statement of Facts, Bui admitted not only to conspiring to commit a Hobbs Act robbery, but also to committing the February 1, 2002 robbery charged in Count 2. Moreover, Bui was on clear notice during the plea colloquy that he was bound by his written Plea Agreement and the Statement of Facts, even if the Court did not go over every part of those documents. Lastly, the record from the plea colloquy conclusively establishes that defendant understood that the commission of a robbery was an essential element of Count 3, to which he was pleading guilty:

> THE COURT: If you went to trial, then the government would have the burden of proving you guilty. In order for them to meet that burden, they'd have to prove that you were guilty beyond a reasonable doubt, and to do that, they have to prove each and every one of the essential elements of the offense beyond a reasonable doubt.
>
> [Dkt. No. 38-1] at 23:18-23.
>
> ****
>
> THE COURT: Now, as to Count 3, the government would have to prove beyond a reasonable doubt first of all that the conspiracy described in Count 1 did, in fact, occur. Do you understand that?
> THE DEFENDANT: Yes, I do.
> THE COURT: Then they'd have to prove that on February 1, 2002, in Springfield, Virginia, you knowingly and intentionally, and again that means not by an accident or mistake or other innocent reason, used, carried, and brandished

10

>a firearm, specifically a handgun, during the commission of a robbery. Do you understand that?
>THE DEFENDANT: Yes, I understand.

Id. at 25:11-23. This exchange cannot be squared with Bui's position that the only predicate for Count 3 was the conspiracy. If, as Bui contends, Count 3 rested solely on Count 1, there would have been no reason for the Court to state that the government would have to prove that Bui used a firearm "during the commission of a robbery." Moreover, Bui admitted that he understood that Count 3 rested on his use of a firearm "during the commission of a robbery," and neither he nor his counsel objected to the Court's phrasing.

Bui also argues that even to the extent the indictment lists both offenses as predicates for Count 3, the Court cannot presume that Bui's guilty plea pertained to both predicates, and must instead assume that he pleaded guilty only to the less serious predicate, namely conspiracy to commit Hobbs Act robbery. In making this argument, Bui relies on United States v. Vann, 660 F.3d 771, 775 (4th Cir. 2011). In Vann, the defendant appealed the district court's holding that his prior convictions for violating the North Carolina indecent liberties statute, N.C.G.S. 14-202.1, constituted violent felony convictions sufficient to trigger the sentencing enhancement under the Armed Career Criminal Act ("ACCA"). The North Carolina statute at issue contained two subsections, only one of which, subsection (a)(2), had been held to constitute a violent felony under the ACCA. Vann had pleaded guilty to charging documents which "allege[d] a violation of the Statute, without specifying either subsection thereof. And, consistent with North Carolina law, each [charging document] properly allege[d] the indecent liberties offense in conjunctive fashion." Id. at 775. An en banc panel of the Fourth Circuit found that the charging documents provided a relatively "flims[y] foundation . . . for determining the nature of the prior offenses," and held that because "it is settled that a charging document must allege conjunctively

11

the disjunctive components of an underlying statute," Vann did not necessarily plead guilty to violating subsection (a)(2) when he pleaded guilty to the conjunctively stated charge in the indictment. Id. Instead, the Fourth Circuit held, "[t]he 'formal criminal charge,' . . . is nothing more than the least serious of the disjunctive statutory conduct, not the entirety of the conduct alleged in the conjunctive." Id. at 775. Bui argues that based on this precedent, "it must be assumed that [his] plea of guilty pertained solely to 'the least serious of the disjunctive statutory conduct,' . . . which is conspiracy to commit Hobbs Act robbery." [Dkt. No. 36] at 3.

This argument fails because Vann is clearly distinguishable.[5] Unlike Vann, Bui "was not charged in an indictment 'alleging conjunctively the disjunctive components of a statute,' such that it cannot be said that [he] necessarily pleaded guilty to possessing a firearm in furtherance of a crime of violence in violation of § 924(c)." Wynn, 2020 WL 1875646, at *5. Instead, Count 3 charged two separate offenses, Hobbs Act conspiracy (Count 1) and substantive Hobbs Act robbery (Count 2), as predicates for the § 924(c) violation (Count 3). Therefore, the record in this case is not "flims[y]," but rather conclusively establishes that when Bui pleaded guilty to Count 3, he admitted to the facts supporting both predicate offenses charged in Counts 1 and 2. Because

---

[5] Several district courts in the Fourth Circuit that have rejected similar arguments from other defendants. See, e.g., Wynn v. United States, No. 3:16-cr-74, 2020 WL 1875646, at *4–5 (W.D.N.C. Apr. 15, 2020); Suttles-Barden v. United States, No. 3:12-cr-146, 2020 WL 1061222, at *4–5 (W.D.N.C. Mar. 4, 2020); Moore v. United States, No. 3:13-cr-173, 2020 WL 597430, at *3–4 (W.D.N.C. Feb. 6, 2020); Ferone v. United States, No. 5:12-cr-37, 2020 WL 520945, at *5–6 (W.D.N.C. Jan. 31, 2020); Morrison v. United States, No. 5:12-cr-37, 2020 WL 522151, at *5–6 (W.D.N.C. Jan. 31, 2020); King v. United States, No. 5:12-cr-37, 2020 WL 520943, at *5–6 (W.D.N.C. Jan. 31, 2020); Castellon v. United States, No. 3:08-cr-134, 2020 WL 400634, at *3–5 (W.D.N.C. Jan. 23, 2020); Adams v. United States, No. 12-cr-300, 2019 WL 4735407, at *2 (D. Md. Sept. 27, 2019); Floyd v. United States, No. 13-cr-47, 2019 WL 4735409, at *2 (D. Md. Sept. 27, 2019); Williams v. United States, No. 12-cr-300, 2019 WL 4741801, at *2 (D. Md. Sept. 27, 2019); Gaithers v. United States, No. 12-cr-300, 2019 WL 4741807, at *2 (D. Md. Sept. 27, 2019); United States v. Taylor, No. 3:08-cr-326, 2019 WL 4018340, at *4-5 (E.D. Va. Aug. 26, 2019). Appeals of several of these decisions are pending before the Fourth Circuit.

one of those offenses, substantive Hobbs Act robbery, remains a crime of violence under <u>Mathis</u>, his motion fails.[6]

III.

For the foregoing reasons, Bui's motion will be dismissed by an Order to be issued with this Memorandum Opinion.

Entered this 24 day of April, 2020.

Alexandria, Virginia

/s/
Leonie M. Brinkema
United States District Judge

---

[6] Even if the Court were to vacate Count 3, it is unlikely that would result in a material difference to Bui's current sentence of 211 months. Bui does not contest that his conviction remains valid for Count 1, for which there was a guideline sentencing range of 168 to 210 months. If the Court were to vacate Count 3, it would conduct a resentencing. <u>See</u> <u>United States v. Jackson</u>, Nos. 15-3693 and 14-2898, 2019 WL 3423363, at *2 (7th Cir. July 30, 2019) ("[A] district court's sentencing determination is necessarily holistic, and so when part of a sentence is vacated, the court is entitled to resentence on all counts . . . .") (internal citations omitted). Given Bui's extensive criminal history and the seriousness of the conduct to which he admitted, the Court would likely find that a sentence at the high end of the guidelines, or 210 months, was appropriate. Accordingly, even if Bui's motion were successful, he would likely, at most, obtain a reduction in sentence of 30 days.

13